The Law Offices of Leon Ozeran
Leon Ozeran, Esq., CA Bar No.: 296071
8200 Wilshire Blvd., Suite 400
Beverly Hills, CA 90211
Tel: (310) 461-3730
EFax: 424-302-0490
Attorney for Plaintiff
ALEXANDER RUSSELL

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALEXANDER RUSSELL<br>Plaintiff,<br><br>vs.<br><br>BMW of NORTH AMERICA,<br>LLC; and<br>DOES 1-20<br>inclusive;<br><br>Defendants.<br>_____ | **Case Action No.**:<br><br>**CLASS ACTION**<br><br>**JURY DEMAND**<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF BASED ON:**<br><br>1. CONVERSION;<br>2. MISREPRESENTATION & DECEIT;<br>3. UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS & PROFESSIONAL CODE §172000;<br>4. UNJUST ENRICHMENT<br>5. INTERFERENCE WITH POTENTIAL ECONOMIC ADVANTAGE;<br>6. BREACH OF IMPLIED COVENANT OF GOOD FAITH & FAIR DEALING |

## INTRODUCTION

1.      Plaintiff Alexander Russell ("Plaintiff") individually and on behalf of all others similarly situated, by and through his attorney, hereby brings this Collective and Class Action Complaint against BMW of NORTH AMERICA, LLC ("BMW NA" or "BMW") and DOES 1-20 to seek redress for BMW's deceptive and unfair practices as it relates to their car lease terms.

2.      BMW NA entered into the agreement and implemented a policy of denying motorists insured under a Safeco policy the benefits of the policy (proceeds) paid out by Safeco in cases of a total loss of the vehicle. Plaintiff's vehicle, a 2019 BMW M45 was totaled as a result of the traffic accident.  Safeco agreed to pay out the market value of the car established to be $106,178.97.  After BMW was notified of the total loss, BMW NA demanded that Safeco pay the entire amount to the BMW, even though at that point, the total outstanding amount of the unpaid lease according to the BMW's Lease Agreement with the Plaintiff was confirmed by BMWFS to be $81,589.57, leaving Plaintiff's equity in the vehicle of $24, 589.40. It is believed and therefore alleged that BMW NA enacted such a practice to drastically increase its profitability by diverting what rightfully shall be the Plaintiff's equity (funds) for its own use. Thus, it is also alleged that BMW engaged in the deceptive and fraudulent practice of misrepresenting the meaning of the Agreement and providing false and deceptive interpretations and statements.

## PARTIES

3.      At all relevant times, Plaintiff ALEXANDER RUSSELL is a resident of the State of California. He leased a 2019 BMW X5 ("Plaintiff's vehicle") from STERLING BMW ("Dealer") on 10/19/2019.

4.      BMW North America, LLC ("BMW NA" or "BMW") is a Delaware Limited Liability Company with its principal place of business located in Woodcliff Lake, New Jersey.

5. BMW FINANCIAL SERVICES NA, LLC ("BMWFS") is a financial arm of the BMW NA and is a servicer of Lease Agreements for BMW NA. All financial operations in connection with the Lease Agreements are handled by BMWFS and in this case, the final pay-off amount for the total loss of the Plaintiff's vehicle was also requested and then forwarded by Safeco to BMWFS.

6. In this case, BMWFS provided all instructions to Safeco related to the payoff instructions, and the funds for the final pay-off amount from Safeco were sent to BMWFS.

7. All acts and omissions of BMW NA and BMWFS and their employees, agents, associates, partners, parents, or subsidiaries as alleged herein occurred while they were acting within the course and scope of their duties, and therefore BMW is responsible for Plaintiff under the doctrine of Respondeat Superior and/or other doctrines.

8. Defendant BMW NA operates through numerous entities performing different tasks. These entities are not independent but fully owned and controlled by the BMW NA. BMWFS is just one such entity. All such entities, including the BMWFS, were agents or employees of the BMW NA and were acting within the scope and course of their agency and employment, and with the direction, permission, and consent of the BMW NA, thus each of them is responsible in some manner for the events and happenings herein referred to or otherwise proximately caused the acts, omissions or events hereinafter alleged.

9. Plaintiff does not know the true names and capacities of all above-mentioned entities, whether corporate, partnership, associate, individual or otherwise of BMW issued herein as Does 1 through 20. Plaintiff will seek leave to amend this Complaint to set forth the true names and capacities of the fictitiously named BMW together with appropriate charging allegations when ascertained.

10.     All acts of corporate employees as alleged were authorized or ratified by an officer, director, or managing agent of the corporate employer.

11.     Each Defendant, whether actually or fictitiously named herein was the principal, agent (actual or ostensible), or employee of BMW NA and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts and omissions hereinafter set forth because of which each Defendant is liable to Plaintiff for the relief prayed for herein.

## JURISDICTION AND VENUE

12.     BMW is one of the largest car manufacturers in the world. It has thousands of dealerships throughout the world including multiple dealerships in California. Thus, BMW has purposefully availed themselves of the privilege of conducting activities in the state of California and has established minimum contacts sufficient to confer jurisdiction over them; and the assumption of jurisdiction over BMW will not offend traditional notions of fair play and substantial justice and is consistent with the Constitutional requirements of due process.

13.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1332(a).

14.     The matter in controversy exceeds $75,000.00, exclusive of interest and costs; and Plaintiff and Defendant are citizens of different states.

15.     The claims asserted by the putative class, when aggregated according to 28 U.S.C. § 1332(d)(6), exceed the amount of $5,000.000 as required by 28 U.S.C. § 1332(d)(2).

16.     At least one member of the California Class is a citizen of a State different from at least one BMW within the meaning of 28 U.S.C. § 1332(d)(2)(A).

17.     The number of members of all putative classes alleged exceeds 100 as required by 28 U.S.C. §1332(d)(5)(B).

18.     The primary Defendants are not States, State officials, or other governmental entities under the definition of 28 U.S.C. § 1332(d)(5)(A).

19.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial part of the events or omissions giving rise to the claims occurred in the Central District of California.

20.     This Court has supplemental jurisdiction over state claims pursuant to 28 U.S.C. §1367 because the claims arise from a common nucleus of operative facts and thus adjudication of both state and federal claims furthers the interests of the judicial economy.

21.     Accordingly, this Court has jurisdiction over the parties and the subject matter of this action, and the venue is proper.

## **GENERAL ALLEGATIONS**

22.     It is well-known fact that for the last few years, due to inflation and difficulties with manufacturing and delivery of new cars, the demand for pre-owned (used) cars has risen dramatically.  As a result of rising demand, the value of used cars has gone up.  Leased vehicles' values have begun to exceed the residual values specified in the original car lease agreements. Such an increase in residual value has created a situation where lessees have found themselves in possession of vehicles whose market value is significantly more than the amounts owed on their respective leases, as calculated by Civil Code Section 2987. As a result of this increased equity, in case of a total loss of the vehicle, often the insurance companies appraise the replacement market value of the car as higher than the remaining loan amount as specified in the lessees' agreements with BMW. Thus, lessees are recognizing that they have equity exceeding the outstanding balance and shall be entitled to receive the difference from the insurance companies. Lessees were the ones who purchased the policies and made payments to their policies required as a condition of the Lease.

**PLAINTIFF'S EXPERIENCE**

23.     Plaintiff's case is one such case.  On 10/19/2019 Plaintiff entered an Agreement to lease a BMW X5 from STERLING BMW ("Dealer") for 36 months with the scheduled maturity date of 10/09/2022.

24.     On 02/14/2022, Plaintiff was involved in a traffic accident that resulted in the total loss of the vehicle.  His insurance company, Safeco, according to his Safeco policy agreed to pay the replacement value of the BMW X5.

25.     Due to the above-mentioned factors of used car market appreciation, at the time of the accident, the market value of the BMW X5 was determined by Safeco to be $106,178.97; at the same time, the residual balance on Plaintiff's Loan according to BMWFS was $81,589.57, thus leading to the Plaintiff having $24,589.40 in equity.

26.     However, despite numerous attempts by Plaintiff's attorneys to persuade Safeco to pay out the equity portion to Plaintiff, Safeco complied with BMW's demands to forward the entire amount to BMWFS.

27.     In a letter to Plaintiff's attorneys dated March 31, 2022, BMWFS made misleading statements stating that because the car was a total loss, Plaintiff immediately lost his right to purchase the vehicle and BMW has the right to terminate the Agreement.  BMWFS provided what looks like a legal conclusion that because BMW elected to terminate the Agreement, it automatically "repossesses" the Plaintiff's right of ownership and his rights to deal with Safeco.

28.     BMWFS further stated that based on the fact that BMW Trust was listed as the owner on the title of the car (which is usual practice in the case of leased vehicles) it is the rightful owner of the vehicle and can collect the entire proceed well exceeding the amount of the loan.

29.     In Lease Agreements, the leasing company (BMW) cannot transfer the title to the Lessee (Plaintiff) until the total amount of the loan is paid off and

thus, holds the title in its own name (BMW Trust) during the lease payment period to assure performance under the Agreement.  Then, when the final payment is made and the loan is paid off , the Agreement is terminated as completed and the Lessor forwards the title to the Lessee for DMV transfer.  That is a routine practice.

30.     If that case would not have involved the "total loss" argument, under the "normal" payoff procedure, as soon as the final payment was received, the titleholder, BMW Trust would have forwarded the title (i.e. Pink Slip) to the Lessee.

31.     In a closed-end consumer vehicle lease, the consumer is always entitled to purchase the vehicle during the term of the lease, or at the end of the lease. That right is clearly stated in the Lease Agreement Section 27: the Lessee has a "right to purchase a vehicle ASIS, WHERE-IS."  Also, Section 30 of the Lease provides that Lessee may terminate this Lease at ANY TIME.

32.     In a above-mentioned letter dated March 21, 2022, BMW made several false and misleading representations related to the issue as to why under the Lease Agreement BMWFS is entitled to the entire payout and why lessees' could not purchase their vehicles in case of a total loss. In fact, those representations were false and BMW knew the statements were false when they made the representations. There is no provision in the Lease Agreement listing BMWFS as a solo Loss Payee under Section 20.  Contrary to BMWFS's position, BMWFS is listed only as an additional payee secondary to the Lessee.  Even more misleading is the statement in the letter that:  *"BMWFS is entitled to the insurance proceeds in the event of a total loss."*  BMW implies in its interpretation is that it is entitled to the **entire payment regardless of whether it exceeds the payoff amount or not.**

33.     BMW's actions of twisting the essence of the Lease Agreement, misquoting the Sections of the Agreement, and then providing opinions interpreting the Agreement to represent an outright lie perpetrated by BMW to deny Lessees rightful equity and fraudulently appropriate their money, thus committing

conversion. Under no circumstances does this Agreement provide for a windfall to BMW – that was not a part of intentions of the parties at the time of signing the Agreement. In reality, any funds in excess of the outstanding balance do not belong to BMW regardless whether they were sent to BMW by mistake or deceit. Thus an acceptance by BMW of any amount exceeding the loan balance and then refusal to refund it upon demand represents fraud and theft, and possibly a criminal offense.

34.     As stated above, BMW should have known that its intentional actions were false, fraudulent, and deceptive.  Cal. Civil Code § 2987 discusses a "…lessee's right to early termination of lease contract; conditions; notice."  Under Cal. Civil Code § 2987, consumers have the right to terminate their lease early at any time and for any reason as long as the money owed to the lessor is sufficient to cover the payoff amount of the lease.

35.     BMW has colluded and intimidated other entities to engage in the wrongful conduct alleged herein.  BMW has done this for its benefits which included that BMW receives a windfall from converting the lessees' equity into its own profit.

36.     BMW adopted such a deceptive scheme to advance deceptive statements, non-existing provisions, and fraudulent conclusions to intimidate lessees into giving up their equities and to strong-arm Safeco and other insurance companies into compliance with BMW's demands.

## TOLLING

### A. Discovery Rule Tolling

37.     Class Members had no way of knowing about BMW's deceptive practices concerning the truthfulness of BMW's statements of state and contractual prohibitions of the third-party dealers.

38.     Within the period of any applicable statutes of limitation, Plaintiff and the other Class Members could not have discovered through the exercise of

reasonable diligence that BMW was hiding its true practices. All applicable statutes of limitation have been tolled by the operation of the discovery rule.

## B.  Fraudulent Concealment Tolling

39.     All applicable statutes of limitation have also been tolled by BMW's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action.

## C. Estoppel

40.     BMW was under a continuous duty to disclose to Plaintiff and other Class Members the true character, quality, and nature of their Lease Agreements and pay-off policies, including BMW's claim that in case of a total loss, the lessees lose their right to purchase their vehicles.

41.     BMW knowingly, affirmatively, and actively concealed true facts from consumers.

42.     Based on the foregoing, BMW is estopped from relying on any statutes of limitations in defense of this action.

## EQUITABLE RELIEF

43.     Absent an equitable injunction enjoining BMW's conduct alleged herein, Plaintiff, the Class, and the public will be irreparably harmed and denied an effective and complete remedy because they face the real and tangible threat of future harm emanating from BMW's ongoing conduct, which cannot be remedied with monetary damages.

44.     Plaintiff does not know at this juncture whether the Court will accept a model for legal damages that Plaintiff will proffer in the future at the appropriate time, or whether the Court will find that any such model adequately compensates Plaintiff's and the Class's losses. Accordingly, Plaintiff sets forth alternate claims for legal damages and equitable restitution.

45.     Similarly, as set forth herein, BMW's material deceit and misrepresentations made in regards to the ability of the Lessee (Plaintiff) to purchase the vehicle in case of the total loss are ongoing and, accordingly, represent an ongoing threat to Plaintiff, the Class, and members of the general public who have not yet (but who are likely to) come into contact with BMW' misrepresentations, and who risk becoming injured thereby. Plaintiff seeks, on behalf of himself, the Class, and the general public, an injunction prohibiting BMW from refusing to allow lessees to buy out their vehicles after total loss; and also prohibiting BMW to accept funds from insurance companies in excess of an amount of remaining loan on the Agreement.  Specifically, Plaintiff seeks the Court's determination that insurance companies shall pay out the loan amount to the BMW and excess funds to the insured lessees as their equity.

## CLASS ACTION ALLEGATIONS

**Class actions:**

46.     Plaintiff brings this action as a class action on his behalf and behalf of all others similarly situated under Federal Rule of Civil Procedure 23, for declaratory judgment, restitution, injunctive relief, damages, costs, and attorneys' fees.

47.     Plaintiff brings this class action lawsuit on behalf of himself and the proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  Plaintiff seeks to represent the following group of similarly situated persons (the "Class"), defined as follows:

> **All persons who leased BMW vehicles and then suffered a total loss of their leased vehicles and were precluded from receiving a payout equal to their equity in their vehicles**.

48.     The members of the Class are so numerous that the joinder of all members is impracticable. On information and belief, there are in excess of a

thousand members of the Class. Discovery will reveal, through BMW's records, the approximate number of Class members. However, the class is estimated to be greater than 100 individuals and the identity of such membership is readily ascertainable and the total damages will exceed $5,000.000.

49. Common questions of law and fact exist to all members of the Class, which predominate over any questions that may affect individual Class members. Among the questions of law and fact common to the Class are the following:

i. Whether BMW's policy of prohibiting lessees from buy-outs of their vehicles after accidents that resulted in total loss caused Plaintiff and the Class to suffer economic harm;

ii. Whether BMW violated California Business and Professions Code §§ 17200, *et seq.*;

iii. Whether BMW's misrepresentations and deceit are material to reasonable consumers;

iv. Whether Plaintiffs and the Class are entitled to restitution or damages and if so, the court may establish that the appropriate measure of damages is the difference between the Pay-Off amount and the Fair Market Value of the Vehicle as determined by insurance companies/authorized appraisals;

v. Whether BMW's actions violate federal and California laws invoked herein;

vi. Whether BMW engaged in the behavior knowingly, fraudulently, recklessly, or negligently; and,

vii. Whether Class and Subclass members are entitled to payment of actual, incidental, consequential, exemplary, and/or statutory damages plus interest thereon, and if so, what is the nature of such relief?

50.     Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

51.     The prosecution of separate actions by individual members of the Class would run the risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for the BMW.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

52.     The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members.

53.     Plaintiff will fairly and adequately represent and protect the interests of the members of the Class.  Plaintiff is a member of the Class described herein and does not have interests antagonistic to, or in conflict with, the other members of the Class.

54.     The Class is readily definable and prosecution as a class action will eliminate the possibility of duplicative litigation, while also providing redress for claims that would otherwise be too small to support the expense of individual complex litigation.

55.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual Class members are relatively small, the expense and burden of individual litigation make it impossible for individual Class members to seek redress for the wrongful conduct asserted herein. If Class treatment of these claims is not available, BMW would likely continue their wrongful conduct, will unjustly retain improperly obtained revenues, and/or otherwise escape liability for their wrongdoing.

56.     BMW was unjustly enriched to the detriment of the Class, entitling the Class to disgorgement of all monies resulting therefrom;

57.     The Class is entitled to restitution and/or disgorgement, in addition to, or as a substitute for, damages under California law.

58.     Plaintiff's claims are typical of the Class because all members of the Class were injured, and may continue to be injured, in the same manner by BMW's unlawful, anticompetitive and inequitable methods, acts, and practices.

59.     Unless addressed, BMW's practices will continue and the Class will further be harmed in the future.

60.     The class damages are similar and ubiquitous.

## FIRST CAUSE OF ACTION

## CONVERSION

61.     Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

62.

> "Conversion is generally described as the wrongful exercise of dominion over the personal property of another. . . . The basic elements of the tort are (1) the plaintiff's ownership or right to possession of the personal property; (2) the BMW's disposition of the property in a manner that is inconsistent with the plaintiff's property rights; and (3) resulting damages."                                    CACI Sec. 2100

63.     In this case, Plaintiff entered into a valid contractual agreement with STERLING BMW ("Dealer") to lease a 2019 BMW X5 for 36 months with the scheduled maturity date of 10/09/2022.

64.     On 02/14/2022, Plaintiff was involved in a traffic accident that resulted in a total loss of the vehicle. Safeco agreed to pay the replacement value of the BMW X5.

65.     The market value of BMW X5 was determined by Safeco at this time to be $106,178.97; at the same time, the residual balance on Plaintiff's Loan

according to BMWFS was confirmed to be $81,589.57, thus leading to Plaintiff having $24,589.40 in equity.

66.     Despite attempts by Plaintiff to persuade BMW to refund the equity portion in the amount of $24,589.40 to Plaintiff, BMW refuses to do so. The entire amount is still in possession of BMW.

67.     BMW's interpretation of the Lease Agreement and the "legal" conclusion made by BMWFS was specifically designed to intimidate insurance companies and force them to forward the entire payouts to BMW, thus denying Lessees rightful equity.

68.     In this case, due to such policy, Safeco refused to pay Plaintiff the difference i.e. the equity, and forwarded the entire amount to BMWFS.

69.     Because the payment of equity was never refunded, Plaintiff suffered economic harm.

70.     BMW acted tortuously, intentionally, and improperly, using deceit and coercion.

71.     It was reasonably foreseeable to BMW that acting in such a manner would expose people, such as the Plaintiff and Class to harm.  And in fact, Plaintiff and others similarly situated suffered harm.

## SECOND CAUSE OF ACTION

### Misrepresentation, Deceit

72.     Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

73.     In a letter dated March 21, 2022, BMW made several false and misleading representations related to the issue as to why under the Lease Agreement BMWFS is entitled to the entire payout and why lessees' could not purchase their vehicles in case of a total loss.  BMW Financial made representations that:

> "As servicer for the owner of the leased vehicle, and pursuant to the terms outlined in Section 20 of the Motor Vehicle Lease Agreement (Lease Agreement), BMW FS is listed as loss payee on the vehicle's insurance policy. Under Section 25, the insurance company is required to settle with BMW FS for the actual cash value of the vehicle at the time of loss.  The lessee's obligations under Section 25 are limited to any past due payments, property taxes, any deductible, or other items deducted from the actual cash value of the vehicle by the insurance company".

> "….BMW FS is entitled to the insurance proceeds in the event of a total loss."

<em>Letter March 31, 2022</em>

74.     In fact, those representations were false and BMW knew the statements were false when they made the representations.  There is no provision in the Lease Agreement **listing BMWFS as a solo Loss Payee under Section 20.**  The correct wording is as follows:

> "The coverage will name you as an additional insured and loss payee.  I will provide you with at least 30 days' advance notice of cancellation. You have the right to endorse my name on any insurance check or settlement you receive. You also have the right to speak to my insurance company about my insurance coverage."

<em>Lease Sec.</em> 20

75.     Contrary to BMWFS's position in Sec. 20 (above), BMWFS is listed only as <u>an additional payee</u> secondary to the Lessee.  The correct interpretation of Sec. 20 is that both, (Lessee and BMW) are payees under insurance payouts. Clearly, there is no provision that BMW **is the solo payee** and moreover, is **entitled to more** than the remainder of the loan.

76.     Additionally, under Section 25 (above),  **there is no provision** that the insurance company is required to settle **unilaterally and without the Lessee..."**

77.     Even more misleading is the statement by the BMWFS in the March 21, 2022 letter that: *"BMW FS is entitled to the insurance proceeds in the event of a total loss."* BMW implies in such statement that it is for a fact entitled to the **entire payment regardless of whether it exceeds the payoff amount or not.** The correct wording of the Lease Agreement is as follows:

> "The Lease Agreement provides for a gap waivers" if the actual cash *price were less* than the Adjusted Lease Balance however, as the owner of the leased vehicle, BMW FS is entitled to the insurance proceeds in the event of a total loss.

78.     BMW's statement that "is entitled to the insurance proceeds" is a half-truth, thus misleading. Nowhere in the Agreement is it stated that BMW is entitled to more payout than the outstanding loan. What this Section means is that if the amount paid by the insurance company is less than the Adjusted Lease Balance, BMWFS is entitled to that insufficient amount and in addition to a "gap" insurance amount all to collect the outstanding loan to be whole. In case these two amounts are not enough, the Lessee shall be responsible for a shortfall and is obligated under the Agreement to add to the full amount of the loan from his/her own funds.

79.     To understand the meaning of this provision, we have to remember that the Lease Agreement was enacted in 2019 when, "normally", the value of the used vehicle was less than an expected residual value.  Otherwise, the car companies would adjust prices on leased vehicles to prevent such a situation.  At that time, it was expected that if the car is a total loss, the remaining loan would not be satisfied and thus, BMW would not whole.  Therefore, as a condition of the Lease, BMW required a "gap" insurance to be included in the policy to cover the difference in insurance payout (value at the time of total loss) and the remainder of the loan.   In 2019, BMW did not foresee that value of the used cars would rise. Thus, the Agreement should have merely provided an ability for BMW to collect as much of the remaining loan as possible, i.e. getting insurance payouts, gap insurance, and

other lessee's obligations (as listed in Section 25) to collect as close to the remaining balance as possible.  The agreed purpose of the Agreement by the signing parties was to assure that the loan gets paid.  Under no circumstances does this Agreement provide for a windfall to BMW – that was not a part of the "meeting of the minds" at the time of signing the Agreement. Thus, an acceptance by BMW of any amount exceeding the loan balance and then refusal to refund it upon demand represents pocketing the Lessees' money a.k.a. theft.

80.     The above-stated "interpretations and opinions" of the relevant provisions of the Agreement by BMW were presented to Safeco to deceive it and force it to forward the entire payment to BMW instead of splitting the payout and paying Plaintiff his equity. BMW's actions of twisting the essence of the Lease Agreement, misquoting the Sections of the Agreement, and then providing opinions interpreting the Agreement to represent an outright lie perpetrated by BMW to deny Lessees rightful equity and fraudulently appropriate their money, thus committing conversion.

81.     BMW intended that Plaintiff and the Class rely on BMW's representations that only BMW is entitled to the equity in Lessees' cars, thus forfeiting their equity.

82.     Plaintiff and the Class detrimentally relied on BMW's deceit and were harmed by that.

83.     BMW's actions were a substantial factor in causing such harm.

## THIRD CAUSE OF ACTION

### Unfair Business Practices in Violation of Business & Professional Code §17200 (UCL).

84.     Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

85.     Plaintiff and the class suffered an economic injury due to BMW policy.

86.     Under UCL, a plaintiff has standing by establishing he or she surrendered in a transaction more or acquired in a transaction less than he or she otherwise would have.  Cal. Bus. & Prof. Code § 17204.  Here, Plaintiff and the Class were in a position to receive the benefit of the appreciation of their leased vehicle but were wrongly deprived of such benefit by BMW.

87.     BMW committed acts of unfair business practice, as defined by sections 17200, *et seq.* of the California Business and Professions Code.

88.     <u>The Unfair prong</u> of the UCL creates a cause of action for business practice that is unfair even if not proscribed by some other law.  Here, the BMW's practice was unfair to Plaintiff and the Class in denying them their right to enjoy the benefit of the appreciation of their leased vehicles.

89.     BMW's aforementioned practices, which BMW continues to use, to receive significant financial gain, also constitute unlawful competition.

90.     <u>The Fraudulent prong:</u> BMW engaged in the deceptive practice of misleading consumers to forfeit their equity.

91.     <u>The Unlawful prong:</u> In its acts of misleading consumers regarding their rights to receive equity in vehicles, BMW violated other state and federal laws related to misrepresentation. It is unlawful for BMW to be engaged in the deceptive practice of misleading consumers to obtain more profit.

92.     Furthermore, in the letter dated March 31, 2022, describing the insurance payoff procedure, BMW made misleading and deceitful statements related to the alleged Lease Agreement's provisions requiring Plaintiff and Class Members to surrender and forfeited their rights so only BMW would be entitled to the profit.

93.     Those statements were false and misleading.  Such statements caused Plaintiff and the Class to be deprived of money and/or property to which they had a cognizable claim.

94.     Plaintiff and the Class detrimentally relied on statements made by BMW thus, suffering an injury in fact and economic losses.

95.     Business & Professions Code §17200 provides that: "….unfair competition shall mean and include any unlawful or fraudulent business act or practice."  The acts of omissions, and misrepresentations, together with practices of deceit by the BMW, as alleged herein, constitute a continuous and continuing course of conduct of unfair competition by means of unfair; unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, section 17200, *et seq.*"

96.     There were reasonably available alternatives to further BMW's legitimate business interests, other than the conduct described above.

97.     Plaintiff and members of the Class were misled and coerced into surrendering their rights to the BMW as alleged above.

98.     Plaintiff and members of the Class were misled and, because the misrepresentations Lease Agreement provisions were material, presumably believed that their only option for lack of their rights was to surrender their equity to the BMW, thus suffering economic damages by losing their profits.

99.     BMW violated the UCL by knowingly and intentionally refusing to allow lessees to buy out their vehicles contrary to the provision in an Agreement Sec. 27 allowing to do that ASIS, WHERE-IS  to receive rightful equity.

100.     An unfair business practice occurs when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.  Here, BMW's actions fit under such a definition. BMW coerced the Class to surrender their rights to the BMW thus

depriving the Class of receiving profit.  Simply put, BMW grabbed Lessees' money by misleading Safeco into sending the entire amount to BMW.

101.    As a direct and proximate result of such actions, Plaintiffs and the other Class members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive, and misleading practices in an amount that will be proven at trial.

102.    BMW has been and continues to be unjustly enriched as a result of their wrongful conduct.

103.    The Class is accordingly entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by BMW as a result of such business practices.

## FOURTH CAUSE OF ACTION

### For Unjust Enrichment

104.    Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

105.    Plaintiff and the Class conferred upon BMW an economic benefit, like windfall profits resulting from unlawful misrepresentation and coercion of the customers surrendering their equity to BMW.

106.    BMW benefits resulting from their unlawful and inequitable conduct are economically traceable to denying Class rights to buy out their vehicles.

107.    The economic benefit of windfall consists of receiving more than BMW was entitled otherwise under the Agreement through depriving lessees of their right to purchase their vehicles and realize their profit.  Plaintiff's and the Class' losses were a direct and proximate result of BMW's unlawful practices.

108.    It would be inequitable and unjust for BMW to be permitted to retain any of the unlawful windfalls resulting from their fraudulent, illegal, and inequitable conduct.

109.     As alleged in this Complaint, BMW has been unjustly enriched as a result of their wrongful conduct and by BMW's unfair coercion tactics.  Plaintiff and the Class are, accordingly, entitled to equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by BMW as a result of such business practices.

## FIFTH CAUSE OF ACTION

**Interference with Potential Economic Advantage and Contractual Relations**

110.     Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

111.     Intentional interference with contractual relations occurs when a party intentionally and by improper means damages the Plaintiff's contractual or other business relationships.

112.     In this case, Plaintiff entered into a valid contractual agreement with Safeco Insurance for the policy of his vehicle and fully paid the premium.

113.     On or about February 14, 2022, Plaintiff's BMW X5 was totaled due to an auto accident; Plaintiff then requested $24,589.40 as the payoff from Safeco in the amount of his equity, equal to the difference between the market value of his car and his loan. However, BMWFS interfered and instructed Safeco to forward the entire payment to the BMWFS, including Plaintiff's equity portion. Safeco did as requested and then, BMWFS refused to refund the equity to Plaintiff.

114.     Improper means are actions that are independently actionable such as violations of federal or state law or unethical business practices including misrepresentation (among others).

115.     Plaintiff individually purchased an insurance policy with Safeco.  He alone dutifully paid the entire premium, thus he had an economic relationship with Safeco to receive his equity in case of the accident (in this case $24,589.40.)

116.    BMW enacted a deceptive policy of dealing with insurance companies that were specifically designed to disrupt such business relationships and deny Plaintiff and Class their rightful profit.

117.    Due solely to such policy, the existing business relationship/contract between Plaintiff and Safeco was violated and the funds went to the BMW.

118.    Because Plaintiff was denied his equity, he suffered economic harm.

119.    BMW acted tortuously, intentionally, and improperly, using deceit and coercion.

120.    It was reasonably foreseeable by BMW that acting in such a manner would expose people, such as the Plaintiff and Class to harm.  And in fact, Plaintiff and others similarly situated did suffer harm.

### SIXTH CAUSE OF ACTION

**Breach of Implied Covenant of Good Faith & Fair Dealing in Contract**

121.    Plaintiff hereby refers to and incorporates all above paragraphs of this Complaint by reference, as though fully set forth herein.

122.    In every contract or agreement, there is an implied promise of good faith and fair dealing.  This means that each party will not do anything to unfairly interfere with the right of any other party to receive the benefits of the contract; however, the implied promise of good faith and fair dealing cannot create obligations that are inconsistent with the terms of the contract.

123.    BMW breached the contract by violating the duty to act fairly and in good faith.

124.    BMW is in the business of providing leasing, and/or sale of vehicles.

125.    Plaintiff, and members of the Class, entered into contracts with BMW to lease vehicles.  As stated in the standard Lease Agreement **Section 27**, the Lessee has a right to buy out (purchase) a vehicle ASIS, WHERE-IS.  **Section 30** provides that Lessee may terminate this Lease at ANY TIME.  If the Lessee wants to buy out

the car, the Lease Agreement provides the absolute right of ownership associated with the unimpeded and absolute right to buy the vehicle in any condition and deal with an insurance company on his own.

126.   Nonetheless, BMW denied Plaintiff the right to purchase his car after the accident and stripped him of ownership rights solely for the purpose of appropriating his right to the insurance payout and thus, his portion of equity.

127.   All conditions required for BMW's performance had occurred, i.e. BMW should have refunded the Lessee's equity to Plaintiff and the Class.

128.   BMW unfairly interfered with Plaintiff's and the Class' right to obtain equity in their vehicles.  BMW thus breached the implied covenant of good faith owed to Plaintiff and the Class.

129.   Plaintiff and the Class were harmed by BMW's conduct.

## DAMAGES

130.   As the direct and proximate results of the wrongful acts of BMW, Plaintiff and the Class have suffered general, special, incidental, and consequential damages as would be anticipated to arise under the circumstances.  In addition, because of the alleged intentional fraud, concealment, misrepresentation, and deceit, Plaintiff and the Class are entitled to punitive damages, which shall be fully proven at the time of trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, on behalf of himself and those similarly situated, respectfully request that the Court enter judgment against BMW as follows:

1.   Certification of the Proposed Class, including the appointment of Plaintiff's counsel as class counsel;

2.   An order temporarily and permanently enjoining BMW from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint; BMW's acts of unfair and unlawful practices as set forth above

present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief.

3.      That judgment may be entered in favor of Plaintiff and against BMW;

4.      That the Court adjudge and decree that BMW's conduct, deceit, or combination violates the Unfair Competition Law, section 17200, et seq. of the Business & Professions Code;

5.      An award of damages, trebled, in an amount according to proof;

6.      An award of compensatory and punitive damages in an amount to be determined at trial;

7.      An award of restitution, including disgorgement of profits obtained by BMW as a result of their acts of unjust enrichment, or any acts in violation of state antitrust or consumer protection statutes and laws, including section 17000 of the Business & Professions Code;

8.      An award of pre-and post-judgment interest, and that the interest is awarded at the highest legal rate from and after the date of service of the initial Complaint in this action;

9.      For the costs of suit incurred and reasonable attorney's fees; and,

10.     That the Court grants other legal and equitable relief as it may deem just and proper under the circumstances, including such other relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands trial by jury for all causes of action, claims, or issues in this action that are triable as a matter of right to a jury.

Dated: May 13, 2022                    THE LAW OFFICES OF LEON OZERAN


                                       /s/ Leon Ozeran
                                       Leon Ozeran, Esq.,
                                       Attorney for Plaintiff